Meyer, J.
(dissenting). The judgment of Special Term
should be reinstated. There is no question that the Boldens qualify as a "needy” family under the Aid to Families with Dependent Children program. The sole issue on this appeal is whether they are "categorically related” to that program. The facts are undisputed.
Petitioner Annie Bolden and her husband reside with their seven children in Monticello, New York. The family has been receiving AFDC benefits at least since December of 1976. At that time Mrs. Bolden began therapy at the Sullivan County Mental Health Clinic. All parties agree that Mrs. Bolden’s mental incapacity renders her completely unemployable. Nevertheless, in August of 1978 the local social services agency terminated petitioner’s benefits on the ground that there had been no showing that her mental incapacity rendered her unable to care for her family. In short, the agency’s position is that needy children cannot qualify for AFDC benefits on *948 account of a parent’s mental incapacity unless the parent is disabled from both the support and care functions. In adopting that interpretation the majority misreads the legislation creating the AFDC program.
The governing statute (US Code, tit 42, § 606, subd [a]) is phrased in terms of a deprivation of "support or care * * * of a parent” as Mr. Justice Williams pointed out (97 Misc 2d 271, 272), and the United States Supreme Court has agreed with that interpretation, though in dictum. In Califano v Westcott (443 US 76, —, 99 S Ct 2655, 2658) the Supreme Court, referring to section 606, noted that under it "benefits are available to any family so long as one parent of either sex is dead, absent from the home, or incapacitated”. It gave as a reason for rejecting the "principal wage-earner” construction of section 607 the fact that it would "introduce a term novel in the AFDC scheme” (443 US, at p —, 99 S Ct, at p 2665) and documented that statement in a footnote reading "The Act, for example, provides benefits to two-parent families made needy by the incapacity of either parent, regardless of which parent may have been the 'principal wage-earner.’ 42 U.S.C. § 606(a)”.
The Califano dissenters-in-part (443 US, at p —, 99 S Ct, at p 2666) apparently agreed with that construction of subdivision (a) of section 606, for instead of disputing it they suggested that the differentiation between sections 606 and 607 was that "when a parent suffers from an incapacity * * * the family usually must bear not only the costs of income lost through the one parent’s unemployment, but also medical and other expenses resulting from the disability that often are quite substantial”.
The regulations and interpretations issued by the Department of Health, Education and Welfare support the conclusion that petitioner is entitled to benefits. Subparagraph (i) of section 233.90(c)(1) of title 45 of the Code of Federal Regulations provides: "The phrase 'needy child * * * deprived * * * by reason of requires that both need and deprivation of parental support or care exist in the individual case. The phrase encompasses the situation of any child who is in need and otherwise eligible, and whose parent — father or mother— either has died, has a physical or mental incapacity, or is continually absent from the home. This interpretation is equally applicable whether the parent was the chief breadwinner or devoted himself or herself primarily to the care of the *949 child”. And subparagraph (iv) states that: " 'Physical or mental incapacity’ of a parent shall be deemed to exist when one parent has a physical or mental defect, illness, or impairment. The incapacity * * * must be of such a debilitating nature as to reduce substantially or eliminate the parent’s ability to support or care for the otherwise eligible child”. Thus, if a child is needy and one of his parents is incapacitated, he is entitled to benefits, even though the incapacitated parent might not otherwise provide the support. Such, indeed, has been the construction of the department, for, answering the inquiry posed by Florida State officials, whether "If the father is currently acting as caretaker, must the mother’s incapacity be in relation to being a breadwinner?” the Atlanta Regional Commissioner replied that "The mother’s incapacity under Federal policy would not depend on whether she would be employable in the labor market. Nor is it necessary to determine the role the parent fulfilled prior to the onset of the incapacity.”
Since I agree with Mr. Justice Williams that petitioner was required to show only that her children had been deprived of her support or her care, I would reverse the Appellate Division’s order and reinstate the judgment.
Order affirmed, etc.